IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| **TERRI L. DARTY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **4:07-cv-1636-UWC** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds the Administrative Law Judge's ("ALJ") decision, which has become the decision of the Commissioner, is not supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will **REMAND** for further proceedings the decision denying benefits.

**I. Procedural History**

Plaintiff filed an application for disability insurance benefits in February 2004. (R. 14.) This application was denied administratively at the initial and reconsideration stages. Plaintiff requested a hearing before an ALJ, which was held on April 12, 2006, in

Birmingham, Alabama.  (R. 14.)  On April 2, 2007, the ALJ denied the claim. (R. 20.)  This denial became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review on July 11, 2007.  (R. 3.)  Having timely pursued and exhausted her administrative remedies, Plaintiff filed an action for judicial review in Federal District Court pursuant to section 1631 of the Social Security Act, 42 U.S.C. § 1383(c)(3).

## II.  Factual Background

At the time of the hearing, Plaintiff was a forty-nine year-old woman with a GED. (R. 252.)  Plaintiff has past relevant work experience as a waitress, secretary, cashier, receptionist, and customer service representative.  (R. 21.)  Plaintiff has not engaged in substantial gainful activity since on or about June 15, 2002.  (R. 19.)  She suffers from carpal tunnel syndrome, knee pain, back pain, elbow/arm pain and migraine headaches.  Her medications include oxycotin, lorcet and valium.  (R. 109.)

1.   <u>Carpal Tunnel Syndrome</u>:

In April 2001, the year before Plaintiff's last gainful employment, she underwent surgery for carpal tunnel syndrome on both hands.  By September, although she still had some numbness in her ring and little fingers on her left hand, the records show the surgeries were "quite successful."  (R. 217.)

2.   <u>Migraines</u>:

From June 1996 through November 1999, Plaintiff was treated at MCE Family Healthcare. (R. 111-192.) She also sought treatment at a pain clinic for two months in 2000 and began treatment that same year with Dr. D. W. Michael through at least November 2005. (R. 193-202, 221-39.) Her medical records from these various sources indicate periodic complaints about headaches and migraines. Plaintiff was persistently prescribed medication for her headaches/migraines. (R. 118, 121, 123, 127, 129, 132, 134, 138, 151, 169, 173 176, 182, 186, 193.) However, the notes only indicate approximately ten instances where the migraines were severe and/or required hospitalization. (R. 129, 132, 134, 138, 173, 182, 186, 193.) The last instance occurring around June 2000.

3.   <u>Back, knee pain, neck/shoulder and elbow/arm pain</u>:

Plaintiff began complaining of elbow and arm pain around August 1998. (156, 158, 160-61.) Plaintiff, who has worked as a waitress carrying food trays, frequently complained of arm/elbow pain and frequently received trigger point injections. (*See e.g.,* R. 122, 131, 137, 143, 147, 202-3.) At some point she was given an elbow brace and prescribed Lorect. (R. 132, 158, 142.) Ultimately, she was prescribed oxycotin in June 1999. (R. 122.) The following month she complained that the oxycotin made it impossible for her to function and asked to switch back to Lorcet. (R. 120.)

In April 2000 she began treatment at a pain clinic, with Dr. Matthew Bennet, at which time reported that the trigger point injections had only helped for short periods of time. (R. 202-3.) However, she denied any "significant work or restrictions secondary to pain." (R. 202-3.)

During her initial appointment at the pain clinic she also complained of neck and shoulder pain. Her MRI showed mild left forminal stenosis at C4-5 secondary to spurring, as well as mild disc dessication at the cervical intervertebral disc spaces from C2 to C7. (R. 200.) Plaintiff underwent an epidural and was told she might ultimately need surgery. (*Id*.) After the epidural the pain decreased and almost returned to "baseline." (R. 195-6.) She underwent physical therapy with "fair" results. (*Id*.) Plaintiff had a second epidural, at which time Dr. Bennett indicated a third round might be necessary if the second round did not help. (*Id*.) He was also considering some more trigger point injections. (*Id*.)

After the second epidural treatment, in June 2002, Dr. Bennett indicated Plaintiff had "fairly good" results with regard to her neck and shoulder pain. (R. 193.) However, in January 2001, Plaintiff was in an automobile accident that immediately caused her neck and shoulder pain. (R. 228.) She did not have any fractures or dislocations, but did exhibit tenderness and limited range of motion. (*Id*.) She returned to Dr. Michael, who treated the injuries as soft tissue whiplash and advised Plaintiff to wear a cervical collar and continue on medication. (R. 228.) The following month, February, Plaintiff was

back at "square 1" regarding her neck and shoulder problems and Dr. Michael opined that she had reached maximum medical improvement.  (*Id*.)

Several months later, in July 2001, Dr. Michael indicated Plaintiff's main problem was her neck and shoulder pain.  However, it did not appear to be anything surgical.  (R. 218.)  By December she was "basically status quo" with respect to her neck and shoulder pain.  (R. 215-16.)  Almost one year later, in November 2002, Dr. Michael notes that, besides ongoing neck and should pain, Plaintiff had begun complaining about knee pain.  (R. 214).  Approximately three months later, in February 2003, he noted residual problems with Plaintiff's elbow.  An injection did not help and he noted that Plaintiff should return sooner if she became weak and began dropping items.  (R. 213.)

Later that year, in November 2003, Dr. Michael noted that Plaintiff continued to complain of neck and shoulder symptoms.  However, she had no health insurance he was not capable of going through any expensive work-up in order to determine the nature of her problem and/or any corrective surgery.  (R. 212.)  Several months later, in February 2004, she was involved in another automobile accident.  She injured her knee and had limited range of motion in her back.  (R. 211.)  The following month he opined that the knee should get better, but Plaintiff was complaining more of low back pain.  He indicated that the accident may have aggravated a preexisting condition in the lower spine where we found "fairly significant degeneration at L5-S1 level." (R. 210.)  In April, Plaintiff still complained bitterly of back pain and knee pain.  He reassured her that

neither one looked serious.  He suspected that once her medical liability was exhausted that "things will settle back down."  He recommend physical therapy.  (R. 237.)

In February 2004, she continued to have trouble with her knee.  He wanted to do a work up, but Plaintiff did not have health insurance.  (R. 240.)  Later that year, she continued to complain of knee problems, as well as neck and back pain.  Because she had no insurance, all he could recommend was continuing her medications which "seems to keep things under control."  (R. 239.)

In September 2005, Plaintiff underwent a consultative examination by Dr. Hasmukh Jariwala.  (R. 230-35.)  Upon examination, movement in her knees and other joints was normal.  She had normal range of motion in her back, except her C-spine extension was limited.  She also had pain with spine flexion.  She had minimal difficulty getting on and off the examination table, but had difficulty walking heel to toe, squatting and rising.

An x-ray showed a small bony chip fracture of L4 at the upper anterior boarder. There was also a severe narrowing of the joint space between L5 -S1, as well as a narrowing of the rest of the intervertebral joint spaces from L2 through L5.  Dr. Jariwala diagnosed Plaintiff with severe osteoarthritis L5/S1 and mild osteoarthritis changes between L2/l3, L3/L4, and L4/L5.  On the basis of history, physical examination and X-ray findings, he concluded she had mild to moderate impairment of the spine

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 969 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). The first consideration is whether the claimant is working. If the claimant is working, she is not disabled. If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe

impairment.  If the claimant does not suffer from a severe impairment, she is not disabled.  If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a).  *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).  If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

The burden is on the claimant to show that she meets the criteria under the listing.  To meet the listing, the claimant must be (1) diagnosed with a condition that is listed or its equivalent, and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and duration requirement.  *See Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments.  This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

Pain alone can be disabling. When a claimant claims disability based solely on pain, a three-part standard is utilized in assessing the credibility of his testimony. The claimant must establish evidence of an underlying impairment and either: (1) objective medical evidence to confirm the severity of pain alleged, or (2) a finding that the impairment is of such a severity that it can be reasonably expected to cause the pain alleged. *See, e.g.*, *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (emphasis added).

## IV. Analysis

This Court must remand the Commissioner's decision for failing to fully develop the record. Plaintiff's medical records indicate injuries to her back and knees, as well as persistent complaints over the years relating to back, neck and knees. Although Plaintiff no longer has health insurance coverage, Dr. Michael indicates further testing is necessary

9

to evaluate the extent of her complaints.  Moreover, he indicated surgery might be necessary and suspected she might start dropping items.  Finally, while Dr. Michael indicated that Plaintiff's back and knee pain might "settle down," he also found "fairly significant degeneration at L5-S1 level," (R. 237), and he prescribed Oxycotin and Lorcet.

Give this evidence, further development of the record is indicated.  First, the SSA should obtain the testing needed by Dr. Micheal to ascertain the cause of Plaintiffs's impairments.  Secondly, based upon the results of the testing, as well as his treatment history, the SSA should obtain a functional capacity evaluation from Dr. Michael.

Accordingly, by separate order, the decision denying benefits will be reversed and remanded for further proceedings.


DONE this 31st day of March, 2008.



_____
U.W. Clemon
United States District Judge